732 P.2d 1124

**Stephen Michael ESTRADA, a single man, Plaintiff/Appellant,**

v.

**The ARIZONA BANK, an Arizona banking corporation, et al., Defendants/Appellees.**

**No. 2 CA–CV 5846.**

Court of Appeals of Arizona, Division 2, Department A.

Jan. 13, 1987.

Russo, Cox, Dickerson, Butler & Russo, P.C. by Randall M. Sammons, Tucson, for plaintiff/appellant.

Molloy, Jones, Donahue, Trachta, Childers & Mallamo, P.C. by D. Michael Mandig, Tucson, for defendants/appellees.

OPINION

HOWARD, Presiding Judge.

This is an appeal from the granting of a summary judgment. In February 1967, when the plaintiff was approximately two and one-half years old, his mother was killed in an automobile accident. A wrongful death action resulted in a settlement which netted plaintiff $99,161.54, which was paid into a trust established by the Cochise County Superior Court on October 18, 1968. This trust was to continue until the plaintiff reached 21 years of age. The trust instrument named the Arizona Bank as the trustee for the plaintiff, the sole beneficiary. The plaintiff's grandmother was appointed as his guardian.

In April 1976, in order to conform the trust instrument to the reduction in the age of majority in Arizona from 21 to 18, the Arizona Bank petitioned the Cochise County Superior Court for an order interpreting the trust to allow for termination and distribution of the trust assets upon plaintiff's attainment of the age of 18. On May 17, 1976, the court entered an order providing for the termination of the trust when plaintiff reached age 18 and directing the Arizona Bank to make annual accountings of the trust under the conservatorship statutes, A.R.S. §§ 14–5419 et seq.

Thereafter, in accordance with the court's order, petitions for approval of interim accountings were filed with the court each year from 1976 to 1982. The accounting for the period from May 1, 1981, to April 30, 1982, was approved by the court on August 23, 1982. The accountings fully disclosed all details of the investments, income, expenses, gains and losses from the management of the trust during each accounting period. Notice was given to the beneficiary and his guardian. No objections to these accountings were ever filed, and all were approved by the court.

A seventh and final accounting, covering the period from April 30, 1982, through August 24, 1982, the latter date being the eighteenth birthday of the plaintiff, was filed for approval in September 1982. No-

tice of the petition for approval of the final accounting and of the final settlement and distribution of the trust estate was given to the plaintiff and to Joe Grajeda and Betty Grajeda, the plaintiff's successor guardians. A hearing was held on October 18, 1982, and an order approving the final accounting and proposed final distribution of trust assets was entered, again without objection.

On September 28 and October 20, 1982, the plaintiff, having attained the age of majority, signed documents acknowledging receipt from the Arizona Bank of distributions in the sums of $7,000 and $26,002.54, respectively. Following final distribution of the trust estate, the Arizona Bank filed and gave notice of a petition for final discharge of trustee for a minor. The petition was heard on or about November 15, 1982, and the court entered an order that date acknowledging that no objections to the accountings had been filed and finding that the bank's accountings were complete and correct. The order also found that the final distribution of the trust estate had been accomplished in accordance with the October 18 decree of distribution and ordered that the Arizona Bank be discharged from further claim or demand of any interested person.

On July 30, 1984, this action was commenced. All counts of the complaint derive from the alleged mismanagement of the assets of the trust by the Arizona Bank. The complaint contains five counts. Counts one through three purport to state claims against the Arizona Bank and Arizona Bancwest Corporation, a holding company and owner of the Arizona Bank. Counts four and five attempt to state claims against Ben F. Williams, Jr., Esq., who was hired in 1970 to act as plaintiff's attorney. We are not concerned with the counts against defendant Williams because it appears from the record that he was never served with process in this case.

As against the Arizona Bank, the complaint alleges that the bank allowed the property to remain unproductive despite repeated and numerous demands upon it by plaintiff's guardians who allegedly insisted that the bank convert the trust assets to productive property. Count one of the complaint appears to be a claim for damages attributable to the bank's alleged breach of the common law or contractual fiduciary duties. Count two of the complaint alleges a claim arising out of an asserted misrepresentation by the bank to the plaintiff that it would follow the guardians' alleged demands that the trust property be invested in productive assets. Count three of the complaint asserts that the bank's alleged mismanagement amounted to a negligent failure to act as a reasonable and prudent investor. The prayer for relief sought compensatory damages in an amount not less than $63,966.69 together with punitive damages in the sum of $750,000 and $50,000 in attorney's fees. The Arizona Bank and Bancwest moved for summary judgment on the ground that the complaint was barred by res judicata. The motion was granted, and this appeal followed.

The defendants have two theories which they assert sustain the granting of summary judgment in their favor. First they rely on A.R.S. § 14–5419(D) which states:

"An order, made upon notice and hearing, allowing an intermediate account of a conservator, adjudicates as to his liabilities concerning the matters considered in connection therewith. An order, made upon notice and hearing, allowing a final account adjudicates as to all previously unsettled liabilities of the conservator to the protected person or his successors relating to the conservatorship."

In the case of *In re Estate of Terman*, 135 Ariz. 453, 661 P.2d 1154 (App.1983), the son of a protected person objected to an amended inventory filed by the conservator of his father's estate. The claim was that the assets included in the inventory as sole and separate property of the protected person actually belonged to a trust in which the father and son were co-trustees. The court directed that either party desiring to contest the issues file an appropriate petition, have it set for hearing, and at that time the

court would rule on the questions raised by the objection to the inventory. No such petition was filed by the son and, in the interim, orders were entered approving and settling two annual accounts filed by the conservator. Each of these accountings showed the disputed assets as belonging not to a father/son trust but rather to the conservatorship estate. The son never objected to the inclusion of the disputed assets in the inventory as the court had directed, and the question on appeal was whether res judicata, and the provisions of A.R.S. § 14–5419(D), barred the son's attempt to compel repayment of certain funds. The court held the attempt to force repayment to be precluded by the prior orders, reasoning as follows:

"The conservator proceeded to include the questioned assets in two subsequent annual interim accountings itemizing the assets as estate property. The accounts were approved by court order, without objection from appellant. The annual accountings are final as to the matters therein determined. Approval of the annual accountings after notice and without appeal, is binding in the absence of a fraudulent concealment or misrepresentation." 135 Ariz. at 455, 661 P.2d at 1156.

■ Plaintiff contends that A.R.S. § 14–5419 does not apply because the bank was never appointed conservator of the plaintiff's estate, A.R.S. § 14–5419 having been enacted in 1973, subsequent to the establishment of plaintiff's trust. The defendants respond that the court's failure to appoint it as conservator is a mere technicality and that the court's order in 1976, requiring it file annual accounts in accordance with A.R.S. § 14–5419, shows that the court intended the bank to be responsible as a conservator and protected by the statutes governing conservatorships.

We agree with the plaintiff on this issue. The trust was established in this case as a court-supervised trust, not as a conservatorship and was terminated as a court-supervised trust. The court's order mandating the bank to file annual accountings in accordance with A.R.S. § 14–5419 merely expressed the court's intention to require annual accountings and was not a substitute for appointing the bank as a conservator under the conservatorship statutes.

■ However, defendants' second theory is viable. Defendants claim that even if A.R.S. § 14–5419(D) does not apply, the doctrine of res judicata still bars the plaintiff's claim. We agree. A.R.S. § 14–7201 gives the court exclusive jurisdiction, inter alia, of proceedings to settle interim accounts. A.R.S. § 14–7204 sets forth the notice required for a petition to settle an interim account and in effect provides that all persons who are given such notice are bound by any order settling such an interim account. We hold that a judicial settlement of a trustee's interim accounts as to persons who receive notice and are subject to the court's jurisdiction bars subsequent litigation seeking to raise defaults or defects with respect to the matters shown or disclosed. As observed by the court in *Fraser v. Southeast First Bank of Jacksonville*, 417 So.2d 707 (Fla.App.1982) this is a modified kind of res judicata since matters not disclosed by the accounting, even though they might have been discovered and litigated, may be later litigated.

As observed in *Fraser*, the need for the conclusive effect for periodic accountings is great because the trust may continue for long periods of time. The court in *Fraser* quoted from *In Re Van Deusen's Will*, 24 Misc.2d 611, 196 N.Y.S.2d 737 (Sur.Ct. 1960):

"The application of any other Rule [than res judicata], in our judgment, would result in a maelstorm [sic] of uncertainty, lack of judicial finality and ultimate chaos. Without some safeguards, no fiduciary could ever rest secure after his supposed acquittance. Hence we cannot conceive the prior accounts, and the decrees settling them, as constituting useless gestures which may be lightly brushed aside at the caprice of interested parties years after persons involved and records required are no longer available

to dispute attacks made on them." 417 So.2d at 710.

The bank complied with the notice requirements of A.R.S. § 14–7204. Plaintiff's complaint seeks to raise defaults or defects with matters which were fully disclosed. The doctrine of res judicata bars his claims for the periods covered by the annual accounts.

Plaintiff's reliance on *Mims v. Valley National Bank*, 14 Ariz.App. 190, 481 P.2d 876 (1971) is misplaced. *Mims* held that probate court orders settling the accounts of the bank as executor and as trustee were limited to in rem matters and did not terminate the personal responsibility of the bank, and an action for breach of fiduciary duty was not barred by res judicata. *Mims* was based on the old probate code, which was replaced by the Uniform Probate Code, effective January 1, 1974. The court no longer is limited to in rem jurisdiction. The Uniform Probate Code, specifically A.R.S. § 14–1302(A), gives the superior court jurisdiction to the full extent permitted by the constitution over all matters relating to estates of protected persons, minors and trusts. See *Gonzalez v. Superior Court*, 117 Ariz. 64, 570 P.2d 1077 (1977). Probate proceedings are no longer limited to proceedings in rem. Accordingly, the orders approving the annual accountings bar any claim by plaintiff as to periods covered by those accountings.

A.R.S. § 14–7307 establishes the period of limitations for claims arising out of the final accounting of this court-supervised trust. The plaintiff was an adult when he received the bank's final account. There is no contention that there was any non-disclosure in any of the accountings, including the final account. Under A.R.S. § 14–7307, plaintiff had six months to file a claim against the defendants. He did not do so.

The plaintiff seeks to avoid the limitation period of § 14–7307, contending that it is unconstitutional because it is an unreasonably short period of time within which to assert his claim. Although this constitutional issue was never raised in the lower court, we may consider it since the question is an issue of general statewide significance. See *Barrio v. San Manuel Division Hospital for Magma Copper Company*, 143 Ariz. 101, 692 P.2d 280 (1984). Only when a period of limitations fixed by statute is so short that it, in effect, deprives the party of equal protection of law and due process of law will it be found unconstitutional. *Crawford v. Hunt*, 41 Ariz. 229, 17 P.2d 802 (1932) (statute requiring state and county officers, and ex-officers, their personal representatives or assigns, claiming the right to any salary as officers or ex-officers, due by virtue of a law of the state, to bring an action therefor within 90 days after the date the said salary becomes due is not unconstitutional). Considering the fact that all the information needed by the plaintiff to discover any claim that he may have must be fully disclosed before the six months' limitation applies, we do not believe the legislature acted unreasonably or unconstitutionally in fixing the period at six months.

Affirmed.

HATHAWAY C.J., and FERNANDEZ, J., concur.